Filed 8/12/15  In re Roman P. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ROMAN P., a Person Coming Under the Juvenile Court Law. | |
| DEL NORTE COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>NINA P.,<br><br>     Defendant and Appellant. | A143774<br><br>(Del Norte County<br>Super. Ct. No. JVSQ 13-6015) |

In this Welfare and Institutions Code section 300[1] dependency proceeding, mother Nina P. appeals from an order terminating parental rights to minor Roman P. and ordering adoption as the permanent plan.  Nina argues only that respondent Del Norte County Department of Health and Human Services (the Department) failed to comply with the notice requirements of the Indian Child Welfare Act (ICWA), 25 United States Code section 1901 et seq., and related provisions of California law.  More specifically, she contends the Department failed to:  conduct an inquiry into Roman's potential Native American ancestry, include all available information regarding his maternal relatives in

_____

[1] All subsequent statutory references are to the Welfare and Institutions Code unless otherwise noted.

1

the ICWA notice, and inquire of his father whether he had any Native American heritage. We agree the notice was defective, and we conditionally reverse.

## BACKGROUND

Roman was born in October 2005 to Nina and Stephen P. In January 2013, Nina and her then partner, James H., had a child, Robert H. Nina, James, and the two children lived in Crescent City, while Stephen lived in Texas and had no involvement in Roman's life.

On February 11, 2013, the Department filed a section 300 dependency petition concerning Roman, alleging that: Nina and James had substance abuse problems that impaired their ability to care for Roman (b-1); Nina and James were involved in a "domestically volatile relationship" and had made death threats against James's mother (b-2); Roman was at risk of emotional and physical harm because James had slapped him in the face and hit him on the arm (b-3); Roman's father did not have a relationship with Roman and his ability to parent Roman had not been assessed (b-4); Roman was at risk for abuse or neglect because Nina and James failed to seek medical attention for Robert when the infant was in serious respiratory distress (j-1); and Roman was at risk for abuse or neglect because Nina and James had left Robert in the care of James's mother when he was in respiratory distress (j-2). A petition asserting the same allegations was filed on Robert's behalf.

At a detention hearing two days later, the following exchange occurred regarding the children's Native American heritage:

"THE COURT: Let me ask the mother: Do you have any American Indian heritage?

"NINA: My grandmother told me one time that there's Comanche in our family line somewhere, but I don't remember exactly where she stated.

"THE COURT: All right. And I'm going to order you to provide all the information you have to the social worker. We have an ICWA 20 form that you need to fill out. [¶] . . .

2

"THE COURT: What about [Stephen], do you know if he has any American Indian heritage?

"NINA: I don't know his family history. [¶] . . .

"THE COURT: And is your grandmother still alive?

"NINA: No. She passed away in 2006.

"THE COURT: Do you have any more information that might help us track down the tribe that your children might be affiliated with?

"NINA: I don't know which of my family members I'd be able to talk to about that because I don't know who has that information.

"THE COURT: Okay. Are you a member of a tribe?

"NINA: No. I can't—I don't currently claim. I don't know if I can.

"THE COURT: All right. And are your mother and father alive?

"NINA: My mother, yes. My biological father I don't know.

"THE COURT: And so this grandmother who gave you this information, that was your maternal grandmother?

"NINA: Yes.

"THE COURT: I'm going to direct you to provide as much information as you can to the department."

At the conclusion of the detention hearing, the court ordered Roman and Robert detained, and they were placed together in a foster home.

At a March 15 jurisdictional hearing, the court found the allegations in the petition to be true and sustained the petition. The court was informed that Roman's father lived in Texas and was being assessed by the Department for possible placement.

**ICWA Notice**

On March 19, the Department served a notice of child custody proceeding for Indian child on the Comanche Nation in Oklahoma, the Bureau of Indian Affairs, and the Secretary of the Interior. The notice identified Roman by name but omitted his place of birth. It named Nina as Roman's mother, listing her "Tribe or band, and location" as

"Comanche Nation, Comanche, Continental U.S. Indian Tribes" and her membership or enrollment number as "Comanche Nation."

The notice also provided names for Nina's mother and father (Roman's maternal grandmother and grandfather), and listed "Grants Pass, Oregon" as the current address for the grandmother and no address for the grandfather. Other than stating "Bureau of Indian Affairs" for membership or enrollment number, no other information was provided for the maternal grandmother and grandfather. The notice also provided names for one maternal great-grandmother and one maternal great-grandfather, identifying the Comanche Nation as the applicable tribe or band. No other information concerning the great-grandparents was provided.

The notice identified Stephen as Roman's biological father and provided his address in Texas. It contained no other information regarding Stephen or any other paternal relatives, stating, "No information available" for every category.

**Disposition**

In its March 27, 2013 dispositional report, the Department noted that Nina had indicated she may be of Comanche descent and that it was in the process of verifying the information. It reported, however, that records from a dependency proceeding when Nina was a minor indicated ICWA did not apply to her.

By letter dated April 2, the Comanche Nation responded that it had determined through its enrollment records that Robert and Roman were not eligible to be enrolled members of the Comanche Nation. The letter identified the requirements for enrollment, one of which was a one-eighth blood quantum of Comanche blood.

Following the conclusion of a contested disposition hearing on April 12, the court found that notice was given as required by ICWA. The court declared Roman and Robert dependents of the court and ordered reunification services for Nina, James, and Stephen.

**Six-Month Review**

In advance of the six-month review hearing, a court-appointed special advocate (CASA) submitted a report recommending continued services as to both Roman and Robert. While much of the report is irrelevant to the issues before us, pertinent is the

4

CASA's observation that when asked who was important to him, Roman named Nina, Robert, and his maternal aunt (Nina's sister), who lived next to his maternal grandparents in Oregon.

At an October 2 contested six-month review hearing, the court terminated reunification services as to Robert. Two days later, it continued services as to Roman for six months.

**Nina's Writ Petition and Appeal as to Robert**

Nina petitioned for extraordinary writ review of the court's order terminating services as to Robert, which we denied on its merits. (*In re Robert H.* (Dec. 30, 2013, A139958) [nonpub. opn.].)

The juvenile court subsequently terminated parental rights to Robert and ordered adoption as the permanent plan. Nina appealed, asserting only one argument: that the Department failed to comply with the notice requirements of ICWA. On March 25, 2015, we issued our opinion, agreeing that the ICWA notice was defective and conditionally reversing to allow the Department to provide notice of the proceeding in accordance with ICWA and related provisions of California law. (*In re Robert H.* (Mar. 25, 2015, A142091) [nonpub. opn.] (*Robert H.*).)[2]

**12-Month and 18-Month Reviews as to Roman**

At a 12-month review hearing in March 2014, the court noted that the potential transfer of Roman to Stephen in Texas had fallen through because Stephen had failed to make himself available for a home inspection. Despite this, and the fact that Nina was now homeless, the court again continued services for six more months.

Tragically, Nina's mother suddenly passed away the following month in an automobile accident.

On August 15, the court held an 18-month review hearing at which it terminated reunification services as to Roman and set the matter for a section 366.26 permanency

---

[2] Nina requests that we take judicial notice of our opinion, which request we grant.

5

hearing.  Nina sought writ review of the order, which we again denied on the merits.  (*In re Roman P.* (Oct. 10, 2014, A142790) [nonpub. opn.].)

**Section 366.26 Permanency Hearing**

At a December 12 section 366.26 permanency hearing, the juvenile court terminated the parental rights to Roman and ordered adoption as the permanent plan.

Nina filed a timely notice of appeal.

**DISCUSSION**

Nina's challenge to the juvenile court's order terminating her parental rights begins with the same error she asserted in *Robert H.*  There, she contended that the Department failed to comply with the notice requirements of ICWA because it failed to conduct an adequate inquiry into Nina's Native American heritage and to include all known information in the notice.  We agreed, conditionally reversing the order to allow the Department to provide proper notice.  Nina argues here that the ICWA notice as to Roman contained the same defects, an argument that is well taken.

In *Robert H.*, we set forth the law governing the Department's ICWA notice obligations, and we need not repeat it here.  We simply reiterate that ICWA's strict notice requirements are a fundamental component of the statutory scheme, because " 'the tribe's right to assert jurisdiction over the proceeding or to intervene is meaningless if the tribe has no notice that the action is pending.'  [Citation.]" (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 253; *In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421 ["Notice is a key component of the congressional goal to protect and preserve Indian tribes and Indian families."].)  While ICWA itself does not impose any duty to inquire into a minor's Native American ancestry (*In re H.B.* (2008) 161 Cal.App.4th 115, 120), California law imposes an affirmative duty on a social services agency to interview the minor's extended family to ascertain the required information.  (Cal. Rules of Court., rule 5.481, subd. (a)(4) [social worker must, among other things, interview the parents, Indian custodian, and extended family members to gather information required by the notice]; *In re C.D.* (2003) 110 Cal.App.4th 214, 225 [agency "has a duty to inquire about and obtain,

6

if possible, all of the information about a child's family history" required under regulations promulgated to enforce ICWA].)

As with the notice concerning Robert, the notice here omitted information about Roman's maternal grandmother that the Department could readily have obtained had it satisfied its duty of inquiry. The only information the Department provided for the maternal grandmother—Nina's mother—was her name and an incomplete address ("Grants Pass, Oregon"). The record contains evidence, however, suggesting that with a minimal amount of inquiry, the Department would have been able to obtain additional information regarding the grandmother. First, the family was involved in a dependency proceeding when Nina was a minor. By its own admission, the Department reviewed that file as part of the instant proceeding and, at a very minimum, would have been able to glean the grandmother's date of birth, which was unquestionably in the file.

Moreover, a CASA representative submitted a report in which he related that Roman had identified the most important people in his life as Nina, Robert, and his maternal aunt (Nina's sister), who lived next door to the maternal grandmother in Oregon. This should have indicated to the Department that Nina was or had recently been in contact with her sister, such that her sister, in addition to her mother, was a potential source of information regarding the family's Native American ancestry.

Nina made it clear that what little she knew about her potential Comanche ancestry she had learned from her maternal grandmother, now deceased. It was incumbent upon the Department to interview her extended family members to obtain whatever further details it could about the family's Native American heritage. (Cal. Rules of Court, rule 5.481.) The logical place to start was with Nina's sister and mother, and there is nothing in the record suggesting the Department made any effort to obtain information from them.

Unquestionably, our conclusion in this regard is complicated by the fact of Nina's mother's passing in April 2014. Had the Department conducted a timely inquiry into the family's native ancestry, the maternal grandmother was a potential source of information, a source that is no longer available. But Nina's sister is, and there may be other maternal

7

relatives with pertinent information.  The Department's obligations under ICWA required it to seek out that information.  In light of its apparent failure to do so, we cannot conclude that substantial evidence supports the trial court's finding of proper ICWA notice.

In opposition, the Department contends it was not obligated to send an ICWA notice in the first place because Nina's suggestion that she may have Indian ancestry was too "vague and speculative" to trigger the notice requirement.  In support, it relies on *In re Shane G.* (2008) 166 Cal.App.4th 1532, but its reliance is misplaced.  There, the mother claimed she may have Comanche heritage, although neither she nor her children had ever been tribal members.  (*Id.* at pp. 1536–1537.)  The social worker interviewed the maternal grandmother, who related that the minor's great-great-great-grandmother was a Comanche princess.  The grandmother told the social worker, however, that she never saw any ceremonial costumes and no one in the family ever participated in Indian ceremonies, lived on a reservation, attended an Indian school, or received services from an Indian health clinic.  (*Id.* at p. 1537.)  The parties also stipulated to the testimony of a representative from the Comanche enrollment office, who would testify that the Comanche tribe requires any member to be at least one-eighth Comanche, and the testimony of the maternal grandmother, who would testify that the minor had 1/64th Comanche heritage.  In light of that information, the juvenile court found there to be no reason to believe the minor was an Indian child, and no ICWA notice was required. (*Ibid.*)

The Court of Appeal affirmed, agreeing that ICWA notice was not required.  It reasoned that the agency's inquiry produced no information that the minor was an Indian child and the evidence before the court demonstrated that the Comanche tribe required a minimum blood quantum for membership that excluded the minor.  (*In re Shane G., supra,* 166 Cal.App.4th at p. 1539.)  Here, in contrast, there was no evidence the Department conducted an inquiry into the family's Comanche ancestry, no evidence it contacted Nina's mother, or sister, or other relative.  And while the Department speculates that Roman would not meet the Comanche's one-eighth blood quantum

8

requirement, in the absence of any inquiry, that is nothing more than speculation that cannot excuse the Department's notice obligation.

*In re Hunter W.* (2011) 200 Cal.App.4th 1454, on which the Department also relies to support its "vague and speculative" argument, is similarly distinguishable. There, the mother indicated she may have Native American ancestry through her father and deceased paternal grandmother, although she could not identify the particular tribe or nation, nor did she know of any relative who was a member of the tribe, provide contact information for her father, or identify any other relative who could reveal more information. (*Id.* at pp. 1458, 1468.) The court found that the information provided by the mother was insufficient to trigger the ICWA notice requirement. (*Id.* at p. 1458.)

The Court of Appeal affirmed, rejecting the mother's claim that the juvenile court erred by not requiring the social services agency to conduct an inquiry into the minor's possible Indian ancestry. (*In re Hunter W., supra,* 200 Cal.App.4th at p. 1466.) The court observed that the mother "cite[d] no authority in which the court found sufficient information to trigger ICWA when the parent could not even identify the tribe the family may have had connections to." (*Id.* at p. 1468.) Here, obviously, Nina identified the tribe. And while the Department claims Nina "could not provide contact information for any family member," there is no evidence in the record that the Department asked Nina for the information.

In addition to the lack of information about her own native heritage, Nina also argues that reversal is required because the Department failed to inquire of Roman's father whether he had Native American ancestry. As Nina notes, the Department was in contact with Stephen and had at least two conversations with him prior to sending the ICWA notice. Stephen's counsel was present at the dispositional hearing on April 12 when the court found that proper ICWA notice had been provided, but no inquiry was made of Stephen's ancestry at either that hearing or any of the preceding hearings.

ICWA itself imposes no duty to inquire as to a minor's Native American ancestry. (*In re H.B., supra,* 161 Cal.App.4th at p. 120.) But California provides a higher standard in California Rules of Court, rule 5.481(a), which imposes upon the court and the county

welfare agency "an affirmative and continuing duty to inquire whether a child is or may be an Indian child . . . ."  However, "any failure to comply with a higher state standard, above and beyond what the ICWA itself requires, must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error." (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1162.)  "Where the record below fails to demonstrate and the parents have made no offer of proof or other affirmative assertion of Indian heritage on appeal, a miscarriage of justice has not been established and reversal is not required." (*In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1388.)  Here, Nina complains that no inquiry was made of Stephen concerning his ancestry, but she makes no offer of proof or other affirmative assertion that Stephen is of Native American heritage.  She has thus not established a reasonable probability that she would have obtained a more favorable result in the absence of the error.  And, we note, Stephen has not appealed and thus has not asserted this argument on his own behalf.  The Department's apparent failure to inquire of Stephen regarding his ancestry was thus harmless error.

## DISPOSITION

While we are reluctant to delay permanency for Roman, the Department must fulfill its obligations under ICWA and California law, and the juvenile court's finding that it did so was unsupported by substantial evidence.  We therefore reverse the order terminating parental rights to Roman and remand the matter for the limited purpose of providing notice of the proceedings in accordance with the provisions of ICWA and California law, and to file all required documentation with the juvenile court.  If, after proper notice, a tribe claims that Roman is an Indian child, the juvenile court shall proceed in conformity with all provisions of ICWA.  If, on the other hand, no tribe claims him to be an Indian child, the order terminating parental rights to Roman shall be reinstated.

 

                                       _____

                                       Richman, J.

We concur:


_____

Kline, P.J.


_____

Stewart, J.

A143774